# **EXHIBIT A**

# COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, ss

SUPERIOR COURT
TRIAL DEPT.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Deborah Craig

        Plaintiff

vs.

Town of Hudson

        Defendants

~~CIVIL ACTION NO.~~ 2081-1454

FILED
IN THE OFFICE OF THE
CLERK OF COURTS
FOR THE COUNTY OF MIDDLESEX

JUN 2 2 2020

CLERK

COPY

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## COMPLAINT

Plaintiff Deborah Craig ("Ms. Craig" or "Plaintiff") brings this action against her former employer, the Town of Hudson ("the Town" or "Defendant"), upon information and belief, except as to her own actions, the investigation of her counsel, and facts that are a matter of public record, as follows:

## OVERVIEW

1. As is alleged more fully below, Ms. Craig claims that the Town has: 1) retaliated against her in violation of the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.*, by using her taking of FMLA leave as a negative factor in its decision to terminate her employment; 2) unlawfully terminated her employment in breach of the contract that existed between Ms. Craig and the Town in the form of the Town's Personnel Regulations, by: a) failing to have "just cause" to support the decision to terminate her employment; and b) by failing to comply with the disciplinary procedure set forth in the Personnel Regulations.

2. Ms. Craig seeks payment of all lost back pay and benefits, front pay and benefits, compensatory damages, liquidated damages, attorneys' fees and costs, and all permissible legal interest.

## THE PLAINTIFF

3.     Plaintiff Deborah Craig is a resident of Hudson, Massachusetts and was employed by the Town out of Hudson, Massachusetts.

## THE DEFENDANT

4.     Defendant, the Town of Hudson, is a municipality located in Middlesex County. The Town is governed by a five-member Board of Selectmen.

## FACTUAL ALLEGATIONS

5.     In or about August 2007, the Town hired Ms. Craig as the full-time Conservation Commission Administrator and Board of Health Administrator, as well as the back-up Administrator for the Building Department.

6.     At that time, Ms. Craig reported to the Director of the Health Department, Dr. Sam Wong ("Dr. Wong").

7.     In or about 2012, the Town Health Department became a Host Community for the Massachusetts Department of Public Health Prevention and Wellness Trust Fund program.

8.     In or about 2016, Ms. Craig was made the full-time Administrator for the Board of Health.

9.     At all times during Ms. Craig's employment as Board of Health Administrator, her employment was governed by, and she was subject to, the Town's Personnel Regulations.

10.    In May 2015, the Town Health Department hired Kelli (Trainor) Calo ("Ms. Calo"), a recent college graduate, to be the full-time sanitarian.

11.    In or about October 2017, Dr. Wong resigned from his employment with the Town.

12.    Thereafter, Ms. Calo was hired as the Town's Director of Public and Community Health, after which Ms. Craig began reporting to Ms. Calo.

2

13. Upon information and belief, Ms. Calo had no prior managerial experience at the time she was hired into this position.

14. In or about 1993, Ms. Craig was diagnosed with major depression and anxiety.

15. In or about the Fall of 2018, Ms. Craig began to experience a significant flare up of her depression and anxiety.

16. As a result, in November 2018, Ms. Craig applied for FMLA leave and submitted the required certification paperwork.

17. The certification submitted by Ms. Craig stated that it was medically necessary for Ms. Craig to have a reduced schedule through February 2019 with the need for intermittent leave thereafter.

18. Between November 2018 and February 2019, Ms. Craig was out of work on certain dates for FMLA-approved reasons.

19. Between March 2019 and August 19, 2019, Ms. Craig was out of work on certain dates for reasons that Ms. Calo believed were not for FMLA purposes, and which Ms. Calo considered to be excessive.

20. Some of Ms. Craig's absences during this time, however, were as a result of her experiencing symptoms associated with the conditions for which her FMLA was approved.

21. Throughout at least 2019, Ms. Calo kept a running list of Ms. Craig's absences. Despite the fact that Ms. Calo later claimed that it was inconsequential, Ms. Calo's list color coded Ms. Craig's FMLA absences in red.

22. On August 19, 2019, Ms. Calo issued Ms. Craig a written warning for "absenteeism" ("Written Warning"). The Written Warning did not reference or address any aspect of Ms. Craig's performance other than her absenteeism/attendance.

23. Between August 20, 2019 and October 25, 2019, Ms. Craig missed four days of work – three days for sick-related reasons and one day to attend a funeral.

24.  On October 25, 2019, Ms. Calo issued Ms. Craig a Notice of Disciplinary
     Probation ("Probation Notice"), notifying Ms. Craig that she was being placed on
     a 90-day disciplinary probation "[i]n accordance with the Town of Hudson
     Personnel Regulations section 13.0 Disciplinary Actions."

25.  The October 25th Probation Notice stated that the 90-day period was to run from
     "October 28, 2019 through January 28, 2020."

26.  The Probation Notice further stated that "[a]t the end of the probation period of
     January 28, 2020, [Ms. Calo] will notify the Executive Assistant that either: 1. The
     Employee's performance and behavior was satisfactory and that she will retain the
     employee [sic] her position; or 2. The Employee's performance and behavior
     remained unsatisfactory and she recommends either suspending or discharging the
     employee."

27.  Ms. Craig did not miss one day of work from October 28, 2019 (the start date of
     Mr. Craig's probation) until December 16, 2019; the first 49 days of her probation.

28.  On December 16, 2019, Ms. Craig contacted Ms. Calo to inform her that she
     would be out of work that day because she was experiencing intestinal issues.

29.  At that time, Ms. Craig offered to make up the missed day by working on
     December 18, 2019, a pre-scheduled and pre-approved vacation day. Specifically,
     Ms. Craig texted Ms. Calo, "I will come in Wednesday instead if that's ok."

30.  In response, Ms. Calo declined Ms. Craig's offer to work on December 18th,
     telling Ms. Craig that she could "still take Wednesday as it was already pre-
     approved vaca/comp."

31.  Ms. Craig responded by again offering to work on December 18th, stating, "Are
     you sure? I will do whatever you prefer." Ms. Craig then gave Ms. Calo certain
     details about a meeting scheduled for that evening.

32.  In response, Ms. Calo thanked Ms. Craig for the information and did not take Ms.
     Craig up on her offer to work on December 18th.

33. On December 17, 2019, Ms. Craig's symptoms continued and so she saw her primary care doctor.

34. Ms. Craig notified Ms. Calo of the appointment and provided her with a note from her doctor.

35. After seeing her primary care doctor, and based on her doctor's recommendations, Ms. Craig scheduled an appointment for an ultrasound with a gastroenterologist at 10:15 a.m. on December 19th.

36. Ms. Craig notified Ms. Calo of the appointment and informed her that she planned to come into the office afterwards.

37. Ms. Craig attended her appointment on December 19th and reported to work immediately thereafter.

38. Ms. Craig had sufficient accrued sick, vacation, and/or comp time to cover her absences during that week.

39. Shortly after Ms. Craig arrived at work Ms. Calo informed Ms. Craig that she was being placed on administrative leave, and provided Ms. Craig with a Notice of Hearing, informing Ms. Craig of a forthcoming informal hearing to determine whether Ms. Craig's employment should be terminated.

40. On January 2, 2020, Ms. Craig attended the informal hearing, and on January 7, 2020, Ms. Craig received a letter from Ms. Calo informing her that her employment with the Town was terminated.

41. In relevant part, Ms. Calo's January 7th letter stated, "[t]he reasons for your termination are your absenteeism, your poor performance, and continued deterioration despite a one year-long performance improvement plan.

42. Ms. Calo's January 7th letter further stated that the decision to terminate Ms. Craig's performance was in part based on her handling of the Town's flu vaccines.

43.  On January 22, 2020, Ms. Craig initiated an appeal of her termination by filing a
Step One grievance pursuant to the Town's Appeals Procedure as set forth in
Section 5-4 of the Town's Charter.

44.  Over the course of the four step grievance procedure, the Town made the
following statements or took the following positions with respect to Ms. Craig's
termination and appeal:

- In response to Ms. Craig's Step Two grievance, Town Executive Assistant,
  Tom Moses ("Mr. Moses") acknowledged that the Town was required to
  have cause to terminate Ms. Craig's employment, and that Ms. Craig was
  terminated for her absences, but that the "reason for [Ms. Craig's] absences
  in December 2019 [were] really beside the point . . . ."

- In response to Ms. Craig's Step Two grievance, Mr. Moses claimed that
  Ms. Craig was not "committed to showing better attendance," because she
  did not come in to work on December 18, 2020, Ms. Craig's preapproved
  vacation day, despite the fact that Ms. Craig twice offered to Ms. Calo that
  she would work that day.

- In response to Ms. Craig's Step Two grievance, Mr. Moses' attempted to
  support Ms. Calo's determination that Ms. Craig's handling of the flu
  vaccine was improper, by asserting that both he and Fernanda Santos ("Ms.
  Santos"), the Town's Human Resources and Licensing Manager, were
  "equally troubled" by Ms. Craig's handling of the vaccines. Upon
  information and belief, both Mr. Moses and Ms. Santos have no prior
  experience handling or storing flu vaccines and no prior knowledge of the
  regulations governing flu vaccine storage and handling.

- Because the Town does not have a Personnel Board, Robert G Clark,
  Chairman of the Town's Finance Committee, was appointed to respond to
  Ms. Craig's Step Three grievance. In response to Ms. Craig's Step Three

6

grievance, and despite the fact that Ms. Craig's employment was governed by the Town's Personnel Regulations, Mr. Clark stated that he had not "had the opportunity to review the Town's Personnel Regulations."

- At Ms. Craig's Step Four Grievance, the Town's Board of Selectmen voted 3-0 in favor of upholding Ms. Craig's termination. No member of the Board asked Ms. Craig any questions and two of the members abstained from voting.

45. Following Ms. Craig's termination, she applied for unemployment benefits.

46. The Town challenged her eligibility and on April 6, 2020, the Department of Unemployment Assistance ("DUA") held a hearing in the matter.

47. On April 25, 2020, the DUA rendered its decision in the matter.

48. In relevant part the DUA held:

- "The [Town] failed to establish that it discharged the claimant due to a knowing violation of a reasonable and uniformly enforced policy or rule because it did not present any policies or rules related to the flu vaccine scenario and because it does not uniformly enforce its attendance policy."

- "The [Town] failed to establish that it discharged the claimant due to deliberate misconduct in willful disregard of its interest related to the claimant's attendance from 12/16/19 through 12/19/19 . . . ."

- "[T]he employer did not submit any testimony or evidence that it explicitly told the claimant that she must not attend [her doctor's appointments between 12/16/19 through 12/19/19]."

49. Upon information and belief, the Town expected that its employees subject to the Personnel Regulations (as set forth in Section 1.3 of the Personnel Regulations) would adhere to the obligations and requirements set forth therein.

50. Section 13.1 of the Personnel Regulations make clear that Ms. Craig was not an employee-at-will, stating in relevant part, "discipline and discharge procedures

will be used with the utmost concern for individuals involved, and all actions
taken under this section will be taken for just cause."

51.   Section 13.4 of the Personnel Regulations sets forth the Disciplinary Procedure
applicable to Ms. Craig's employment, stating in relevant part, "[d]isciplinary
action will include only the following: oral reprimand, written reprimand,
disciplinary probation, suspension and discharge."

52.   Section 13.4-2 sets forth the Written Reprimand requirement within the Town's
Disciplinary Procedure. Specifically, it states that "[i]f the oral warning fails to
correct the situation within thirty (30) days, the supervisor will issue a written
warning including reasons for the warning and an offer of assistance on the part of
the Department Head in correcting the unsatisfactory situation."

53.   Section 13.4-3 sets forth the Disciplinary Probation portion of the Town's
Disciplinary Procedure. In relevant part it states: "The employee will receive a
written notice, stating the reasons for the disciplinary action and effective date of
such action. When the employee's disciplinary probation expires, the Department
Head will notify the Executive Assistant in writing that either: 1. The employee's
performance and behavior was satisfactory and that he will retain the employee in
his position; or 2. The employee's performance and behavior remained
unsatisfactory and he recommends either suspending or discharging the
employee."

54.   Section 13.4-5 sets forth the Discharge portion of the Town's Disciplinary
Procedure. It states, "[p]rior to discharge, a Department Head will make every
effort to correct disciplinary matters by counseling, oral reprimand, or a written
statement."

55.   The Personnel Regulations do not contain any language reserving for the Town the
right to accelerate or bypass any of the disciplinary steps.

56. The Town breached its contractual obligation to Ms. Craig as set forth in the Personnel Regulations when it terminated her employment in the middle of the 90-day disciplinary period.

57. Neither the Written Warning nor Probation Notice contained any statement or information suggesting that the Written Warning or Probation Notice were issued for any reason other than attendance; i.e. they do not contain any language suggesting that they were issued to Ms. Craig for poor work performance.

58. The Town breached its contractual obligation to Ms. Craig as set forth in the Personnel Regulations when it terminated her employment, based in part on allegations of "poor performance" and "mishandling of flu vaccines," issues that were not mentioned in either the Written Warning or Probation Notice.

59. The Town's decision to terminate Ms. Craig's employment was not supported by "just cause" because it was irrational and unreasonable.

60. Specifically, Ms. Craig did not miss one day of work for approximately a month and a half after being placed on 90-day probation.

61. Instead of allowing Ms. Craig to return to work after her brief absence in mid-December 2019 (and complete her contractually promised 90-day probation), Ms. Calo unreasonably determined that Ms. Craig's first instance of missing work in the probation period for a legitimate sickness was sufficient "absenteeism" to constitute "just cause."

62. The Town's assertion that Ms. Craig's absences were the basis for her termination was in bad faith as Ms. Craig's attendance improved substantially between August 19, 2020 (the date of the Written Warning), and January 7, 2020, the date of Ms. Craig's termination.

63. The Town's reliance in part on Ms. Craig's handling of the flu vaccine to support her termination was in bad faith and unreasonable. Ms. Craig never received a written warning or was given the benefit of any other aspect of the Town's

Disciplinary Procedure. Ms. Craig's handling and storage of the flu vaccines was also in compliance with applicable regulations at all times.

64. The Town's decision to terminate Ms. Craig's employment based on her alleged absenteeism was based in part on her absences that were covered under the FMLA, thereby considering those absences as a negative factor in its decision.

## COUNT 1
### 29 U.S.C. § 2601 *et seq.* – The Family Medical Leave Act

65. Plaintiff re-alleges and incorporates by reference ¶¶ 1-63 above as if fully set forth herein.

66. By their conduct as set forth herein, the Defendant violated the FMLA by considering Ms. Craig's taking of FMLA leave as a negative factor in its decision to terminate her employment.

67. As a result of the Defendant's conduct the Plaintiff has been damaged.

## COUNT 2
### Breach of Contract/Wrongful Termination –
### Failure to Comply with Personnel Regulation's Disciplinary Procedure

68. Plaintiff re-alleges and incorporates by reference ¶¶ 1-66 above as if fully set forth herein.

69. The Town's Personnel Regulations constituted a binding contract between the Town and Ms. Craig that set forth terms and conditions of her employment.

70. The Defendant breached the Personnel Regulations by terminating Ms. Craig in the midst of her 90-day probation period, and for terminating Ms. Craig for reasons that Ms. Craig was not given the benefit of the Town's Disciplinary Procedure..

71. As a result of the Defendant's conduct, the Plaintiff has been damaged.

<u>COUNT 3</u>
<u>Breach of Contract/Wrongful Termination –</u>
<u>Lack of Just Cause to Terminate Ms. Craig</u>

72.  Plaintiff re-alleges and incorporates by reference ¶¶ 1-70 above as if fully set forth herein.

73.  The Town's Personnel Regulations constituted a binding contract between the Town and Ms. Craig that set forth terms and conditions of her employment.

74.  The Town's Personnel Regulation required the Town to have "just cause" to terminate Ms. Craig's employment.

75.  The Defendant breached the Personnel Regulations by terminating Ms. Craig without "just cause" to do so.

76.  As a result of the Defendant's conduct, the Plaintiff has been damaged.

**WHEREFORE,** the Plaintiff prays for judgment against the Defendant as follows;

A.  A judgment against the Defendant for violating the FMLA;

B.  A judgment against the Defendant for breaching its contract with Ms. Craig;

C.  A judgment and order awarding the Plaintiff lost back pay and benefits;

D.  A judgment and order awarding the Plaintiff front pay and benefits;

E.  A judgment and order awarding the Plaintiff compensatory damages;

F.  A judgment and order awarding the Plaintiff liquidated damages;

G.  A judgment and order requiring Defendant to pay the Plaintiff's reasonable attorneys' fees and the costs of this action;

H.  A judgment and order requiring the Defendant to pay all permissible legal interest; and

I.  Such other relief as this Court may deem just and proper.

<u>JURY DEMAND</u>

Plaintiff demands a trial by jury on all causes of action so triable.

Respectfully submitted,
Deborah Craig

By her attorney

Adam J. Shafran, BBO#670460
ashafran@rflawyers.com
Rudolph Friedmann LLP
92 State Street
Boston, MA 02109
617-723-7700
617-227-0313 (fax)

Dated: June 17, 2020

| CIVIL TRACKING ORDER (STANDING ORDER 1- 88) | DOCKET NUMBER 2081CV01454 | Trial Court of Massachusetts The Superior Court |
|---|---|---|

| CASE NAME: Craig, Deborah vs. Town of Hudson | Michael A. Sullivan, Clerk of Court Middlesex County |
|---|---|

| TO: Adam Jeremy Shafran, Esq. Rudolph Friedmann LLP 92 State St Boston, MA 02109 | COURT NAME & ADDRESS Middlesex County Superior Court - Woburn 200 Trade Center Woburn, MA 01801 |
|---|---|

## TRACKING ORDER - A - Average

You are hereby notified that this case is on the track referenced above as per Superior Court Standing Order 1-88. The order requires that the various stages of litigation described below must be completed not later than the deadlines indicated.

### STAGES OF LITIGATION

### DEADLINE

| | SERVED BY | FILED BY | HEARD BY |
|---|---|---|---|
| Service of process made and return filed with the Court | | 09/21/2020 | |
| Response to the complaint filed (also see MRCP 12) | | 10/20/2020 | |
| All motions under MRCP 12, 19, and 20 | 10/20/2020 | 11/19/2020 | 12/21/2020 |
| All motions under MRCP 15 | 08/16/2021 | 09/15/2021 | 09/15/2021 |
| All discovery requests **and depositions** served and non-expert depositions completed | 06/13/2022 | | |
| All motions under MRCP 56 | 07/12/2022 | 08/11/2022 | |
| Final pre-trial conference held and/or firm trial date set | | | 12/09/2022 |
| Case shall be resolved and judgment shall issue by | | | 06/22/2023 |

The final pre-trial deadline is **not the scheduled date of the conference**. You will be notified of that date at a later time.

**Counsel for plaintiff must serve this tracking order on defendant before the deadline for filing return of service.**

This case is assigned to

| DATE ISSUED 06/24/2020 | ASSISTANT CLERK Arthur T DeGuglielmo | PHONE (781)939-2757 |
|---|---|---|

# Commonwealth of Massachusetts

MIDDLESEX,SS.

TRIAL COURT OF THE COMMONWEALTH
SUPERIOR COURT DEPARTMENT
CIVIL DOCKET NO. _20-1454_

_Deborah Craig_ , PLAINTIFF(S),

v.

_Town of Hudson_ , DEFENDANT(S)

## SUMMONS

THIS SUMMONS IS DIRECTED TO _the Town of Hudson_. (Defendant's name)

**You are being sued.** The Plaintiff(s) named above has started a lawsuit against you. A copy of the Plaintiff's Complaint filed against you is attached to this summons and the original complaint has been filed in the _Middlesex County Superior_ Court. **YOU MUST ACT PROMPTLY TO PROTECT YOUR RIGHTS.**

1.   **You must respond to this lawsuit in writing within 20 days.** If you do not respond, the court may decide the case against you and award the Plaintiff everything asked for in the complaint. You will also lose the opportunity to tell your side of the story. You must respond to this lawsuit in writing even if you expect to resolve this matter with the Plaintiff. **If you need more time to respond, you may request an extension of time in writing from the Court.**

2.   **How to Respond.** To respond to this lawsuit, you must file a written response with the court **and** mail a copy to the Plaintiff's Attorney (or the Plaintiff, if unrepresented). You can do this by:

   a.   Filing your **signed original** response with the Clerk's Office for Civil Business, _Middlesex County Superior_ Court, _200 Trade Center, Woburn, MA 01891_ (address), by mail or in person, **AND**

   b.   Delivering or mailing a **copy** of your response to the Plaintiff's Attorney/Plaintiff at the following address: _92 State St. Boston, MA 02109_.

3.   **What to include in your response.** An "Answer" is one type of response to a Complaint. Your Answer must state whether you agree or disagree with the fact(s) alleged in each paragraph of the Complaint. Some defenses, called affirmative defenses, must be stated in your Answer or you may lose your right to use them in court. If you have any claims against the Plaintiff (referred to as **counterclaims**) that are based on the same facts or transaction described in the Complaint, then you must include those claims in your Answer. Otherwise, you may lose your right to sue the Plaintiff about anything related to this lawsuit. If you want to have your case heard by a jury, you must **specifically** request a jury trial in your Answer or in a written demand for a jury trial that you must send to the other side and file with the court no more than 10 days after sending your Answer. You can also respond to a Complaint by filing a **"Motion to Dismiss,"** if you believe that the complaint is legally invalid or legally insufficient. A Motion to Dismiss must be based on one of the legal deficiencies or reasons listed under **Mass. R. Civ. P. 12.** If you are filing a Motion to Dismiss, you must also comply with the filing procedures for "Civil Motions" described in the rules of the Court in which the complaint was filed, available at www.mass.gov.courts/case-legal-res/rules of court.

4.  **Legal Assistance.** You may wish to get legal help from a lawyer. If you cannot get legal help, some basic information for people who represent themselves is available at www.mass.gov/courts/selfhelp.

5.  **Required information on all filings:** The "civil docket number" appearing at the top of this notice is the case number assigned to this case and must appear on the front of your Answer or Motion to Dismiss. You should refer to yourself as the "Defendant."

Witness Hon. Judith Fabricant, Chief Justice on _July 17_____, 20 _20_.

_____
Michael A. Sullivan
Clerk-Magistrate


Note: The number assigned to the Complaint by the Clerk-Magistrate at the beginning of the lawsuit should be indicated on the summons before it is served on the Defendant.


## PROOF OF SERVICE OF PROCESS

I hereby certify that on_____, 20___, I served a copy of this summons, together with a copy of the complaint in this action, on the defendant named in this summons, in the following manner (See Mass. R. Civ. P. 4(d)(1-5)):

_____

_____

_____

Dated:_____, 20_____        Signature: _____


N.B.    TO PROCESS SERVER:

PLEASE ENTER THE DATE THAT YOU MADE SERVICE ON THE DEFENDANT IN THIS BOX - BOTH ON THE ORIGINAL SUMMONS AND ON THE COPY OF THE SUMMONS SERVED ON THE DEFENDANT.

| |
|---|
| , 20___ |

# COMMONWEALTH OF MASSACHUSETTS

**MIDDLESEX, ss**                                            **SUPERIOR COURT**
                                                                                **TRIAL DEPT.**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
**Deborah Craig**

               **Plaintiff**                                **CIVIL ACTION NO. 20-1454**

**vs.**

**Town of Hudson**

               **Defendant**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## <u>ACCEPTANCE OF SERVICE</u>

Service of process and of the complaint by which the above action was commenced is accepted on behalf of the Defendant, Town of Hudson.

_Kimberly A. Rozak_  7/20/20

Kimberly A. Rozak, Esq., Attorney for Defendant
Mirick O'Connell
100 Front Street
Worcester, MA 01608
Tel: 508.860.1428
Fax: 508.983.6294
Email: krozak@mirickoconnell.com